```
 1              UNITED STATES DISTRICT COURT

 2       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3        HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

 4

 5   UNITED STATES OF AMERICA,        )
                                      )
 6              PLAINTIFF,            )     CASE NO.
                                      )
 7              vs.                   )     CR 23-00082-VAP
                                      )
 8   KHALID ITUM,                     )
                                      )     PAGES 1 TO 38
 9              DEFENDANT.            )
     ─────────────────────────────────)

10

11

12

13              REPORTER'S TRANSCRIPT OF
                  PRETRIAL CONFERENCE
14             TUESDAY, JANUARY 16, 2024
                      9:47 A.M.
15              LOS ANGELES, CALIFORNIA

16

17

18

19

20

21

22
     _____
23

           MIRANDA ALGORRI, CSR 12743, RPR, CRR
24            FEDERAL OFFICIAL COURT REPORTER
             350 WEST 1ST STREET, SUITE 4455
25            LOS ANGELES, CALIFORNIA 90012
                MIRANDAALGORRI@GMAIL.COM
```

1                **APPEARANCES OF COUNSEL:**

2

3   **FOR THE PLAINTIFF:**

4      MARTIN ESTRADA
       UNITED STATES ATTORNEY

5      BY:  DAVID PI
       BY:  DANNY WEINER

6      BY:  ELIZABETH DOUGLAS
       Assistant United States Attorneys

7      United States Courthouse
       312 North Spring Street

8      Los Angeles, California 90012

9

    **FOR THE DEFENDANT:**

10

11      PAUL HASTINGS, LLP
       BY:  ADAM FEE
       1999 Avenue of the Stars

12      Suite 2700
       Los Angeles, California 90067

13

14      PAUL HASTINGS, LLP
       BY:  BENJAMIN NICHOLSON

15      695 Town Center Drive
       17th Floor

16      Costa Mesa, California 92626

17

18

19

20

21

22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; TUESDAY, JANUARY 16, 2024

 2                              9:47 A.M.

 3                                ---

 4

 5              THE CLERK:  Calling item 1, CR 23-00082,

 6    United States of America versus Khalid Itum.

 7              Counsel, please state your appearances for the

 8    record.

 9              MR. PI:  Good morning, Your Honor.  David Pi on

10    behalf of the United States.

11              MR. WEINER:  Good morning.  Danny Weiner on the

12    behalf of the United States.

13              MS. DOUGLAS:  Good morning.  Elizabeth Douglas on

14    behalf of the United States.

15              THE COURT:  Thank you.  Good morning.

16              MR. FEE:  Good morning, Your Honor.  Adam Fee on

17    behalf of Mr. Itum who is standing to my right.

18              MR. NICHOLSON:  Good morning.  Ben Nicholson on

19    behalf of Mr. Itum.

20              THE COURT:  Good morning.  This matter is on the

21    Court's calendar for a pretrial conference.  I believe you have

22    been given the tentative ruling on the one motion in limine

23    that was filed.  Yesterday the defense filed an ex parte

24    application to continue the trial which is set for two weeks

25    from today on the basis that they have been unable, partly
```

1   because of the change in counsel -- Mr. Farnsworth and

2   Mr. Lowe, they have been unable to get documents including

3   e-mails and other documents that they deem critical or

4   essential to their defense.

5              What is the Government's position, Mr. Pi?

6              MR. PI:  The Government opposes, and the

7   Government would like the opportunity to say more today because

8   we have not had a chance to file our opposition.

9              THE COURT:  I believe this was just filed

10  yesterday.  So go ahead.

11             MR. PI:  May I take the lectern, Your Honor?

12             THE COURT:  At the lectern, please.

13             MR. PI:  Your Honor, as the Court is aware, the

14  Government's allegations in this case are quite narrow, and

15  they pertain essentially to two instances where the defendant

16  allegedly submitted false invoices to be repaid for services

17  that the Government alleges he did not provide to MoviePass.

18  The defense, as articulated in the application --

19             THE COURT:  I'm sorry.  Let me interrupt you.

20  Did you say two invoices?

21             MR. PI:  He was paid for two invoices; correct.

22             THE COURT:  And those are the two that form

23  the -- that's why you're saying the allegations are narrow.

24             MR. PI:  Correct, Your Honor.

25             THE COURT:  I'm sorry.  Go ahead.

1          MR. PI:  So that results in four counts because

2     there are two for wire fraud and two for money laundering, but

3     they relate to two sets of invoices.

4          And the defense, as articulated in the

5     application that was filed yesterday, is in part that the CEO,

6     Mr. Farnsworth, and Mr. Lowe, another high ranking executive at

7     MoviePass, approved those invoices.  That's the basis for which

8     the defense is now seeking thousands of documents that

9     Farnsworth and Lowe have asserted as privileged in their

10    separate case in Florida for securities fraud.  That's where we

11    are.

12         THE COURT:  I don't believe that this is covered

13    in the motion, but what's the basis -- I know we have discussed

14    this issue the last time I saw you all.  But what's the basis

15    for the -- what type of privilege is being asserted for those

16    other documents?

17         MR. PI:  So there were communications between

18    Farnsworth, Lowe, and the company counsel for HMNY, the parent

19    company of MoviePass.  And since the bankruptcy of MoviePass,

20    the trustee has waived privilege on behalf of MoviePass.  But

21    there was a joint representation of Farnsworth and Lowe and

22    MoviePass because they were all sued by shareholders, in part,

23    for matters relating to securities fraud.

24         THE COURT:  But if I -- and, again, I just saw

25    this this morning.  It was just filed yesterday.  I thought

```
 1   that the application for the continuance referred to e-mails

 2   that they're trying to obtain between Farnsworth, Lowe on the

 3   one hand and Mr. Itum on the other.  What privilege would -- I

 4   know I should be asking this to the defense.  But, to your

 5   knowledge, what privilege would cover that, those e-mails?

 6                 MR. PI:  To the extent -- because I have not had

 7   an opportunity to go through the log and they don't cite to

 8   which particular entries include Mr. Itum as a recipient, I

 9   don't know what other justifications there are for that.  But

10   that is a dispute that they would have had to have had through

11   a Motion to Compel against Farnsworth and Lowe.

12                 But what I can say is that the defense in this

13   case, they have not -- the recitation of facts is incomplete on

14   this issue, Your Honor, because the Government produced e-mails

15   between Defendant Farnsworth and Lowe, many of them which show

16   exactly what the defense says they suspect are in the e-mails

17   in the Florida case.

18                 I have a couple examples which point blank

19   Mr. Lowe says, I approve of the particular invoice at issue in

20   this case.  This is an e-mail Bates numbered ITUM607 that the

21   Government produced in February of last year.  They have had

22   this the entire time.  There's a second e-mail from someone in

23   the finance department of MoviePass e-mailing Stewart Benson,

24   the CFO, copying Mr. Farnsworth and Mr. Itum saying, "The

25   attached has been approved by Mr. Farnsworth.  Please process."
```

1              They already have had these for a year, and they

2  have not mentioned that they have these.  There's many more.

3  Where did the Government get these e-mails, which we produced

4  to the defendant?  We got them from the defendant.  The

5  defendant has a separate SEC case for similar conduct, and the

6  defendant produced his e-mails between him, Farnsworth, and

7  Lowe to the SEC and to the DOJ.

8              THE COURT:  And those are e-mails relating to the

9  payments that form the basis for the charges in this case?

10             MR. PI:  Yes.  The ones I just read out, they

11 are, and there are many more.  And the volume of e-mails that

12 the defendant has already provided that he kept and still has

13 is massive.  He produced approximately 200,000 Bates numbered

14 pages of documents to the SEC and DOJ in those investigations.

15 In fact, 7,000 of the documents that he produced were

16 specifically designated as a response to a request for

17 communications with Farnsworth and Lowe.  That's where I have

18 these documents from.

19             THE COURT:  So your point is that the -- any

20 e-mails between the defendant and Farnsworth and Lowe or any

21 other executive at MoviePass he would have copies of, and he

22 has, in fact, produced them.  Is that the point that you are

23 making?

24             MR. PI:  That is one of two points.  That is one

25 point.

1            And the second point is that if he truly feels

2    that he needs these documents to make his defense that he had

3    approval --

4            THE COURT:  When you say "these documents," you

5    mean the other documents he hasn't received yet.

6            MR. PI:  Correct.  Asserted materials from the

7    filter review.  If he saying he needs them to show that he got

8    permission, he already has those.  The Government has not

9    produced anything to the contrary either.  We don't know

10   anything to the contrary.  He got written approval on those

11   invoices from the very two people he's saying he needs more

12   e-mails from to make that defense.  He has what he needs.

13           THE COURT:  Well, then, let me ask you this.

14   What is the Government's theory of its case with respect to

15   this defense?

16           MR. PI:  The Government's case is, first, that

17   MoviePass was a publicly-traded company.  The fact that the CEO

18   may have either complicitly assisted in fraud does not absolve

19   the defendant or that he was negligent in approving a claim

20   does not make it -- absolve the defendant.  We have other

21   evidence showing that he directed another person to assist him

22   in preparing false budgets that he then sent to MoviePass to

23   indicate he had performed services.

24           The documents we have are text communications

25   with that other person, and he point blank directs that person

1    to insert false numbers into a budget.  That person will

2    testify at trial.

3              THE COURT:  Okay.  So, in other words, the

4    Government's position is that the fact that anyone, Farnsworth,

5    Lowe, anyone else approved payments doesn't mean the defendant

6    wasn't intentionally engaging in wire fraud, for example.

7              MR. PI:  That's correct, Your Honor, because that

8    false budget, that false budget with the fake numbers that the

9    Government alleges the defendant directed someone to insert,

10   that is what he sent to the CFO -- the CEO.  That is what he

11   used as --

12             THE COURT:  So the fact that the -- what the

13   Government intends to prove is that the CEO approved something

14   doesn't alter the defendant's liability?

15             MR. PI:  Correct, Your Honor.

16             THE COURT:  All right.  I understand the -- I'm

17   not -- I understand the allegations.

18             MR. PI:  And so this is, as I said, a massive

19   number of documents he's already had, he's produced, we have

20   produced it back to him selecting what we thought was relevant

21   to the case.  It covers the defense he says he wants to make.

22             In June, in fact, the defense asked the

23   Government to de-designate approximately 170,000 of those

24   documents from the protective order.  The Government agreed,

25   and, in fact, not just the counsel but defendant himself has

1    had access to approximately 200,000 of his own e-mails and

2    documents for that purpose.

3            And overall, the Government has had a completely

4    open-door policy with respect to discovery in this case.  We

5    have produced millions of documents from the Southern District

6    of Florida case very early in this case.  In March we produced

7    our first million plus documents.

8            One would have thought that, given everything the

9    Government has already provided including the unasserted

10   materials from the privilege review happening in Florida that

11   has already been produced as well, that the defense would have

12   at least included one exhibit, one example of something from

13   that filter review process that they think adds to their

14   defense and they suspect there's more of the same in the

15   asserted materials.

16           But there is nothing.  It is pure speculation

17   that any of those e-mails are something Mr. Itum doesn't

18   already have from his e-mail production or that it's something

19   that could be relevant to this case.

20           THE COURT:  All right.

21           MR. PI:  I would also add, Your Honor, that the

22   standard here for the continuance, which the Court knows well,

23   consists of four factors.  This, what I have been talking

24   about, just goes to the question of whether or not a

25   continuance is likely to satisfy the need that the defense has

1  articulated.  The Government believes that a continuance would

2  not help in that respect, and it would delay this case

3  indefinitely until negotiations or a Motion to Compel were

4  resolved with respect to the asserted materials.

5        The other factors the Court should consider

6  include the diligence of the defendant in preparing this case

7  up until now.  The defense has not shown that.  The Government

8  first alerted the defense to the filter review in April of

9  2023.  Despite multiple conversations with defense counsel

10  since then, they have never raised the issue of the filter

11  review until just before the last trial date in November.  Not

12  a single word about it.

13        There they asked for a continuance in part for

14  personal reasons but in part because of the filter review.  The

15  Government immediately worked to get them the unasserted

16  materials.  They have that now.  The Government then tried more

17  than a dozen times to confer with the defense to see if they

18  needed more time or what the issue was.  No response for weeks.

19  And we even put them in touch with the DOJ filter team to see

20  if they could help negotiate getting the asserted materials.

21  This was a couple weeks ago.  Zero response.  And as far as I

22  know from the filter team, they did not even reach out.

23        Then the day before the pretrial conference the

24  defense comes in with a motion saying they need more time.

25  They do not meet that first factor of diligently preparing for

```
 1   trial.  And the last two factors are whether there is any
 2   inconvenience to the Court and the Government and witnesses.
 3   There certainly is.  We have now prepared three times for
 4   trial.  Every time they have sought a continuance, it's at the
 5   last minute.  So we have to proceed as if trial is going to go
 6   forward, and we have done that.  And every time the witnesses
 7   have to rework their schedules.  These are not law enforcement
 8   witnesses.  They are lay people who witnessed what happened in
 9   this case, and they have to prepare every time.
10              And last is prejudice.  The Government would be
11   prejudiced by this continuance.  I have been lead counsel on
12   this case since it was indicted.  I am going on extended leave
13   starting in February.  The Government would have to get another
14   AUSA onboard to relearn the case.  We have already expended
15   significant energy.
16              So for those reasons, Your Honor, they do not
17   meet any of the standards or the requirements for the
18   continuance.
19              THE COURT:  Thank you.  All right.  Mr. Fee,
20   Mr. Nicholson.  My first question is why was this filed at the
21   last minute, beyond the last minute really?
22              MR. FEE:  Your Honor, we don't want an
23   adjournment.
24              THE COURT:  I don't know what you mean by
25   "adjournment."
```

1          MR. FEE:  We want adjournment now -- continuance.

2    Excuse me, Your Honor.  I apologize.  We would love to have

3    proceeded.  We have determined we can't.  Here's why it

4    happened at the last minute, Your Honor.

5          We first learned about this on the -- closely

6    before the prior pretrial conference because Mr. Pi conveyed to

7    us a letter that had been sitting with him since six months

8    earlier.  So we now know about this.  We have been trying to

9    get access to the withheld documents.

10          Last week Farnsworth and Lowe fired their

11    lawyers.  We don't know why.  We're not privy to it.  It's been

12    very difficult to get information from prior counsel.

13          THE COURT:  Excuse me.  But as of last week, you

14    hadn't gotten the documents that you are contending are

15    necessary.  So why -- again, why wait until the day before?

16          MR. FEE:  Your Honor, our hope was that we could

17    keep this date and get access to these documents.

18          THE COURT:  So if you got hundreds of thousands

19    of documents within the last week, you would have been prepared

20    to go to trial?

21          MR. FEE:  We would have done our best to get

22    through -- to word search, narrow it down to the ones involving

23    Mr. Itum because, Your Honor, we had the same question as you.

24    We don't understand the privilege call here.  And we have been

25    getting runaround by both the Government and, frankly, counsel

1    in the Miami case about what could possibly be the plausible

2    cause.  So, yes, 100 percent.  If we got those last week, we

3    would have done our very best to figure out what mattered to

4    us.

5                  Your Honor, you asked the right question to

6    Mr. Pi.

7                  THE COURT:  Well, once in a while I do.

8                  MR. FEE:  It is not as simple, of course, as

9    whether Farnsworth and Lowe literally sent an e-mail saying, I

10   approve the payment of the invoice.  The Government's theory is

11   that the invoice reflected false information.  In other words,

12   that Mr. Itum didn't do the work he's trying to get paid for.

13   And that's what we say in our motion.

14                  The withheld documents and some of the documents

15   that were produced to us in this first batch from the

16   privileged team, which, by the way, are subject to a callback,

17   those are directly relevant to this question:  Was Mr. Itum

18   actually doing the work?  We, of course, submit he is.  We need

19   more evidence on that.

20                  All the numbers about prior productions from

21   Mr. Itum, prior productions to Mr. Itum, Mr. Itum produced

22   things from his personal e-mail when he got a subpoena from the

23   SEC.  That's the number Mr. Pi is talking about.  Mr. Itum, of

24   course, was no longer an employee.  We don't have MoviePass

25   e-mails.  The withheld documents are MoviePass e-mail domain

1   content.  That's the thing that we really think is going to be

2   helpful to us in showing, yes, he did the work, yes, the folks

3   at MoviePass and the parent company knew he was doing the work.

4   That's the core of responding to the Government's defense.

5              Your Honor, we want to find a way to keep this

6   case moving.  It is not prejudice for another AUSA to take the

7   case.

8              THE COURT:  I think it is.

9              MR. FEE:  Your Honor --

10             THE COURT:  If the shoe was on the other foot, if

11  you were suddenly not able to -- and Mr. Nicholson, say, you

12  were not able to try this case, then the defense would come in

13  and ask for a continuance because new counsel had to be

14  briefed.

15             MR. FEE:  Your Honor, put it more succinctly, it

16  is not in the same degree of concern.  We think there is likely

17  *Brady* in these withheld documents, and we put together in the

18  application a pretty compelling case to believe that.

19             Mr. Pi told you today he hadn't even looked at

20  the privileged designations on the privilege log.  It is easy

21  for the Government to be cavalier about policing *Brady*.  This

22  is Mr. Itum's life.  If he is convicted, he will be deported

23  from this country.  I do not think it is remotely the same

24  concern that Mr. Pi, who I will miss at trial and who is a

25  wonderful lawyer, may not be able to do the case in April if on

the other hand Mr. Itum loses access to documents that may

prove his innocence and that we have been diligent in trying to

obtain.

THE COURT:  I am just struggling with how these

documents are necessary for the defense.  I won't say

essential.  That's not the standard.  But I'm struggling with

that.

MR. FEE:  Sure, Your Honor.  So if you look at

the log, there are communications between Itum and the senior

executives, Farnsworth and Lowe, during the exact time of the

important events.  We don't have more from the log than that.

But I can tell you what is in the documents that we have gotten

from that same period.  It is Mr. Itum talking about holding

this event at Coachella that is the subject of the embezzlement

allegation.  So it is the same days, the same week, the same

players.

Why are they withholding these as privileged?  I

would imagine because they think there is something important

or meaningful or there was a lawyer involved that was the

company's counsel and those are sometimes and oftentimes the

most sensitive e-mails, Your Honor.  And we think it will bear

precisely on what this case is about.

On the 15,000 documents that the Wall team at DOJ

did give to us, that is exactly what we found, Your Honor.  We

have found e-mails during that time about Mr. Itum setting up

1    that event with the knowledge of the MoviePass and/or HMNY

2    executives.  That is exactly what we are looking for but not

3    quite perfect because it's often missing Farnsworth or Lowe.

4          We think the jury deserves to hear if the CEO has

5    not only literally approved the invoice but saw that he was

6    talking about the work he was doing because we don't think it

7    is a righteous theory.

8          THE COURT:  Even if -- even if the e-mails have

9    the content that you are describing and Mr. Itum was writing in

10   these e-mails that he had done such and such work, that's not

11   necessarily -- I mean, that's his version of what was done.  It

12   doesn't necessarily prove that he did it.  If the Government's

13   theory is, as I understand it, that he claimed to have done

14   work that he didn't do and he was paid for work that he didn't

15   do and, thus, that's embezzlement, the fact that he claimed he

16   did it or even that Farnsworth and Lowe knew about his claims

17   that he did it, I'm not sure that is really a defense.

18         MR. FEE:  Two things, Your Honor.  It is a

19   defense certainly as to intent because, if he's telling

20   everyone on these e-mails all the time including the CEOs,

21   here's what I'm doing and here's why I'm doing it, but --

22         THE COURT:  What really matters is did he do it,

23   not did he say he did it.

24         MR. FEE:  That's right.  So to the facts, the

25   Government is not going to -- is not going to argue that

1    Coachella did not happen or that Mr. Itum did not do work for

2    it.  They are going to concede that, I expect.  They are going

3    to get down to some pretty fine grain details about did the

4    company approve a payment that Mr. Itum had to make to a hotel

5    for a pre-existing --

6             THE COURT:  $110,000.

7             MR. FEE:  That is exactly right, Your Honor.  We

8    believe there are communications and we know we have seen some

9    in the nonprivileged set but we believe there are more --

10   again, not having these e-mails -- where he is talking about

11   the purpose of reimbursing the 110,000 to the hotel with these

12   executives.

13            So, Your Honor, I actually don't think we have

14   much of a factual dispute.  We have the Government essentially

15   saying, when he put that in the invoice, he was deceiving

16   MoviePass somehow even though -- and this is what our defense

17   will be -- even though the CEO and another senior executive

18   knew it.

19            THE COURT:  But it is a publicly-traded company

20   as Mr. Pi points out.  So the fact that those two knew doesn't

21   absolve.

22            MR. FEE:  So MoviePass is not a publicly-traded

23   company.  Mr. Itum never worked for a publicly-traded company.

24   The Government's theory is a little convoluted, Your Honor, and

25   I'm eager to hear how they articulate it.  HMNY, its parent is

1   a public company.  They haven't charged under books and records

2   fraud or accounting fraud.  I could imagine a theory there

3   which is what the SEC has articulated.  They have said wire

4   fraud.  He lied to get money out of MoviePass.

5               They're going to try to fudge it up and say HMNY

6   to the jury because that's the public company although,

7   frankly, I'm not even sure that is relevant to these charges.

8   It just drives home even more so the importance, Your Honor.

9   We don't have the MoviePass e-mails with Farnsworth and Lowe

10  that are subject to this -- what I think is not an appropriate

11  privilege call.

12              I understand everyone wants the case to get

13  tried.  We want to get the case tried too.  But we don't want

14  to give up on these e-mails.  Some of it has been in the

15  Government's control.  It's been very difficult having Mr. Pi

16  not get good information about the Miami team of prosecutors

17  which he concedes is part of this prosecution team but which is

18  not, frankly, flowing information.  I acknowledge that.

19              THE COURT:  You need to slow down, please.

20              MR. FEE:  I'm sorry.

21              Part of it is beyond our control including

22  Farnsworth and Lowe switching attorneys at the last moment.

23              THE COURT:  Again, that was at the last moment.

24  So Mr. Pi set forth several periods which you weren't really

25  pursuing this.

1          MR. FEE:  Your Honor, that's not true.  You know,

2     I don't -- I don't work for Mr. Pi, and I wasn't sure if

3     what -- if we were going to seek an adjournment until we

4     actually had the documents.  I can represent to you that if I

5     got these documents last week from the Farnsworth and Lowe

6     teams --

7          THE COURT:  That's not really my point or my

8     question.  My question was why weren't you trying earlier?

9          MR. FEE:  We were trying earlier.  It has been

10    difficult to wade through who has what and what the calls

11    actually are.  In the meantime, Your Honor, we got the 15,000

12    from the privilege team which we had to figure out what is in

13    there and what do we think is relevant.  We're trying our best,

14    Your Honor.  It is very difficult to wade through these two

15    prosecution teams, rotating bands of defense lawyers in

16    Florida, meanwhile while we are doing all the other trial

17    preparation that we have to do as well with limited resources,

18    Your Honor.

19         THE COURT:  All right.  Mr. Pi, do you wish to

20    respond?

21         MR. PI:  I do, Your Honor, please.

22         THE COURT:  Go ahead.

23         MR. PI:  So, Your Honor, I do want to respond to

24    a number of points the defense made.  Some of it is just the

25    factual accuracy about the allegations in the case, the facts

```
 1    of the case, and what has happened since the inception of this
 2    case.
 3                With regards to the unasserted materials from the
 4    filter review that have been produced to the defense, defense
 5    stated that among those were many documents that are relevant
 6    to this case, yet they didn't show us a single one in their
 7    motion.  They didn't meet and confer about it.  If we had
 8    something to go off of, that would potentially be persuasive.
 9    But what he has even represented about their substance does not
10    argue for a continuance.
11                He's saying that some of those e-mails relate to
12    the organization of the Coachella event.  That is not in
13    dispute.  And hundreds of e-mails between Mr. Itum,
14    Mr. Farnsworth, and Lowe, which we obtained from him, show the
15    organization of the event.  That's all well and good.
16                The question is is there something in there
17    beyond what has been produced showing an approval of his
18    invoices that would go towards a defense?  If he's saying
19    things to them, that's hearsay.  If they're saying we approve
20    these invoices, that goes to state of mind.  That goes to his
21    state of mind, but we produced those e-mails.  Those executives
22    received the invoice and approved it.
23                The point is that the information he was feeding
24    them about paying for a hotel was false.  That's the issue.
25    There are no e-mails that the defense said could be in the
```

1  asserted materials about that narrow issue.  Just the fact of

2  organizing an event is not a basis to continue.  We have

3  hundreds of those e-mails.

4           In addition, Your Honor, the assertion -- moving

5  on to a separate subject -- that this is all about services for

6  Coachella, that is not true.  The first fraudulent invoice is

7  about just whether he paid for a hotel room, the hotel rooms,

8  booking the whole hotel for that event.  That's what the false

9  budget and invoice are that was approved by --

10          THE COURT:  Again that's the 110,000.

11          MR. PI:  That's the 110-.  The other set of false

12  invoices have nothing to do with Coachella.  That invoice

13  claimed that he performed production services related to films.

14  One of them is "American Animals" and another one is called

15  "Burden."  These are films that MoviePass participated in the

16  production of, they were trying to get into the space of

17  actually making content.  And he claimed to have worked on

18  that.  That has nothing to do with organizing the Coachella

19  event as far as we can tell from the invoice.  These are

20  separate issues.

21          Either way, the defense has said nothing about

22  what is in the unasserted materials that relate to those

23  specific points.  We have hundreds of e-mails about organizing

24  the event.  That will not come into question.

25          The defense has also said that they have

1    diligently prepared.  This is one of the factors the Court

2    should continue {sic}.  It is simply not true.  He first

3    learned about the filter review in April of 2023.  We did not

4    hear anything from them until just before the December trial

5    date in regards to the filter review despite the fact that we

6    engaged them in August over the phone to ask if they had any

7    further questions about it.  Nothing until November.  And then

8    long silences until we came to the day before this pretrial

9    conference.

10            Lastly, Your Honor, I do want to take issue with

11   certain assertions about whether the Government has been

12   diligent in its production.  I do reject the statement that the

13   Government is cavalier with *Brady* obligations.  That is just

14   not true.  We have produced everything that has come our way,

15   and we have done so in a timely manner.

16            Counsel has said that we sat on a letter for six

17   months.  There are things going on in the Florida case.  We are

18   not part of that case.  When things come to us, we make a

19   determination about whether they are *Brady*, and if they are, we

20   produce them.  We don't get everything from them immediately,

21   but we produced what we have got without admitting that they

22   have anything relevant to do with this case.  We have been

23   extremely open, and we reject that accusation. I believe he

24   described this as a runaround by the Government.  That is not

25   true.

```
 1              Thank you, Your Honor.
 2              THE COURT:  All right.  I'm going to -- I'm
 3   inclined to keep the current trial date.  I'm going to ask the
 4   Government to file a written opposition to this application so
 5   that I can carefully consider both sides' positions.  But at
 6   this time, I'm inclined to deny the application and keep the
 7   trial date on the 30th.
 8              Now, my recollection is that the Government's
 9   case in chief is only about three days?
10              MR. PI:  Yes, Your Honor.  We have six to seven
11   witnesses.  I think it could be in two.
12              THE COURT:  All right.  And I don't -- in terms
13   of jury selection, that's usually done in about two to three
14   hours.  I don't see why this case would take any longer than
15   usual.
16              I'm considering but I'm not committed to the
17   idea -- I don't usually use a questionnaire but my questioning
18   of the jurors is very thorough.  We might just send a very
19   short -- I mean, two-question questionnaire down to the panel
20   that is selected before they come up to ask if anyone holds
21   stock in HMNY or ever did hold stock which I think would -- we
22   would disqualify them automatically, I think.  We could also
23   ask if anybody ever -- I don't know if you call it being a
24   member or purchased MoviePass.
25              You know, I think the chances of either of those
```

1    are pretty slim, so I'm not sure I want to waste the time to

2    send a questionnaire down.  For example, I have done this in

3    cases where one of the parties was ABC or Disney and the

4    chances of somebody owning stock in that company were greater,

5    and that way we could quickly move on.  But I'm thinking

6    probably not in this case.  I will ask that question early on

7    in my questioning -- those two questions and see where that

8    leaves us.

9              I'm inclined to deny the application, but I'm

10   taking it under submission.

11             Let me move on to the other things I would

12   normally cover in a pretrial conference although it is possible

13   I would continue this.

14             In any case, I wouldn't be able to continue it

15   beyond the end of -- beyond the middle of February.

16             When are you going on leave?

17             MR. PI:  My last day is currently February 2nd,

18   but I could let that --

19             THE COURT:  If it is a week or two.  Well,

20   February 2nd is only a couple days after January 30th.

21             MR. PI:  It is a Friday.  So we would anticipate

22   the case would finish within the week.  So it would start on

23   the 30th, a Tuesday.  We thought it would finish on Friday, but

24   I have flexibility to finish the trial certainly if we start.

25             THE COURT:  All right.  Does the defense have an

1    estimate of its case?

2              MR. FEE:  Your Honor, we would say two days at

3    the most.  And I have one more thought on the continuance

4    discussion if I may, Your Honor.

5              THE COURT:  Go ahead.

6              MR. FEE:  Your Honor, if the Court adheres to its

7    decision to maintain the current trial date, I would ask that

8    the Government be required to stipulate to the facts that were

9    the premise of their opposition today which is namely that

10   Farnsworth and Lowe approved the invoices and that they were

11   told all of the work that Mr. Itum was doing in connection with

12   those invoices, period.

13             THE COURT:  Well, they certainly want to put on

14   evidence so that the jury has a picture.

15             MR. FEE:  They shouldn't be allowed to argue

16   otherwise, Your Honor.  If they want -- Mr. Pi curiously did

17   not deny that he sat on that letter for six months.  He said

18   they have been otherwise diligent.

19             THE COURT:  Well, I heard it differently.

20             MR. FEE:  If they want to deny or oppose the

21   defense getting more time to get access to those documents, I

22   believe they should be required to stipulate to the facts that

23   Mr. Pi is asserting no one needs to prove because they are

24   undisputed.  That is the premise of his argument.

25             MR. PI:  Your Honor, we can discuss that

```
 1    internally.  I think a more appropriate solution -- and this is
 2    something the Government has actually proposed since June -- is
 3    that we would stipulate to the admissibility of the e-mails I
 4    referenced including many e-mails in which he submitted the
 5    bills, organized the event, got approval for the bills.  The
 6    defense can present that, argue it, and they will have the full
 7    context.
 8              The defense said in principle they would agree to
 9    that stipulation.  But for six months now, they have never
10    actually signed it.
11              THE COURT:  You sent a stipulation to --
12              MR. PI:  Multiple times.  Yes, Your Honor.  Go
13    ahead.
14              THE COURT:  Well, I'm not going to order the
15    Government to stipulate to something as broad as what you are
16    proposing.  One of the reasons I want the Government to file a
17    written opposition is some of the basis for their opposition
18    would have to be accompanied by a declaration.
19              MR. FEE:  Thank you, Your Honor.
20              THE COURT:  All right.  So you think about two
21    days at the most for your case?
22              MR. FEE:  That's right, Your Honor.
23              THE COURT:  So let me go over a couple things.
24              First of all, is there a motion to exclude
25    witnesses during testimony?
```

 1                    MR. PI:  From the defense?

 2                    THE COURT:  Either side.

 3                    MR. PI:  From the Government, yes, Your Honor.

 4                    THE COURT:  Are you going to have a case agent?

 5                    MR. PI:  Yes.  There will be a summary law

 6      enforcement agent.

 7                    THE COURT:  All right.  So that person is not

 8      covered by the exclusion order.  Any witness from either side,

 9      they can be present during opening, during jury selection, but

10      not during the testimony until they have testified if they're

11      going to -- until they have testified and are not subject to

12      recall.

13                    Jury selection, so they send us a panel, about

14      40 on a criminal I think now.

15                    Is that right, Daniel?

16                    THE CLERK:  Yes.

17                    THE COURT:  And they are seated -- you will get

18      the seating chart.  They are seated in -- I don't know what

19      courtroom we will be in.  But Juror No. 1 -- on a numbered

20      chart, Juror No. 1 is in the back row closest to the bench, and

21      then Juror No. 9 is in front of that, and the rest of them are

22      in order in the spectator section.

23                    So you know the order of the jury.  You know, if

24      you decide to exercise a peremptory as to a certain juror, you

25      know who the next one is because the jury will consist of the

first -- I'm going to say eight -- the first eight jurors.  So
somebody exercises a peremptory, when we get to that point, of
Juror No. 3, then our last juror is Juror No. 9.  So that's 1
through 8.  We don't move people around.  We just keep track of
who, during your exercise of your peremptories, who the first
eight jurors are.

You can exercise peremptories to Juror No. 39 if
you want, anyone in the entire panel.  Each side, of course --
the Government has six, and the defense has ten.  On the chart
that we give you, we will start with the Government, then the
defense, then the Government, then the defense has two and so
on.  Don't -- let me go back.

So I, as I said, conduct an extensive voir dire
on everyone.  That's all 40.  So, again, you have information,
if you know you really don't want No. 21 and you think we might
get there, then you can exercise your peremptory as to that
person.

I have questions that I always ask and questions
I tailor to the particular case.  You have to file your
proposed voir dire questions.  I believe the due date is next
Monday.  I will include of those questions the ones I deem
appropriate.  I may reword them.  If they're inappropriate
questions, I won't ask them.

After I finish conducting voir dire, I will call
counsel up to the sidebar and ask you if there are any other

1  particular questions of particular jurors that you want me to

2  ask, any follow-up, or questions of the panel as a whole.  And

3  then, if appropriate, I will ask those questions.

4          Then, if the timing is right, I send the entire

5  panel out for a break unless they have just had one.  And then

6  you will exercise your -- first, of course, any challenges for

7  cause.  Sometimes, as we go along, it becomes obvious there is

8  a challenge for cause either because of a financial situation

9  or family emergency or something, and I tend to take those up

10  as we go along at the sidebar to see if counsel want to

11  stipulate.

12          When the jury is outside the courtroom, then I

13  entertain any other challenges.  And then peremptories back and

14  forth in the manner I told you about a few moments ago where

15  the Government has the first one, you have one, the Government

16  has one, you have two, and so on.

17          After that, when we know who the eight jurors are

18  going to be, we bring the jury back in, and I simply tell them

19  who is on the jury and who is not.  They don't know who

20  exercised peremptories.  Keep in mind that -- now, if they have

21  just taken a break when we finish, then we will do this at the

22  sidebar.  Most of the time we do the peremptories with the

23  jurors outside the courtroom.  So make careful notes about the

24  demographics if either side is going to make a -- the defense

25  is going to make a *Batson* challenge because you will have to do

1    that without seeing the jurors.  They will be outside.  So keep

2    that in mind.

3                When we have selected the jury, I then

4    preinstruct them but not just with the standard preinstructions

5    but also the instructions on the elements of the offenses so

6    they have some sort of framework for why they are hearing

7    particular evidence.  Then we usually break for lunch.  When we

8    come back, the parties will give their openings, and we will

9    probably get to a witness or two the first day.

10               Who will the Government's first witnesses be?

11               MR. PI:  It will likely be the creditors that

12   Mr. Itum was trying to pay back, Mr. Buttgenbach and

13   Mr. DeBrino.  They're the ones who lent him money.

14               THE COURT:  Just so you know, those will be the

15   first -- we might get to both of those witnesses the first day.

16   At the end of the day I ask the parties who the next witnesses

17   are going to be so you know the order to prepare for for the

18   next day.

19               To your knowledge, do any of the witnesses have

20   mobility problems in terms of getting on the witness stand?

21               MR. PI:  For the Government, no.

22               MR. FEE:  No, Your Honor.

23               THE COURT:  Well, we have a lift, but I always

24   like to practice ahead of time to make sure it is working so we

25   don't stumble with that.  That's why I ask that.

1           Let me think.  So your witness list -- I don't

2   think your witness lists have been filed unless they were filed

3   in connection with the first trial date.

4           MR. PI:  No.  The witness list was not filed, but

5   the Government did file a trial memorandum outlining some of

6   this, and there were some other filings as well.  I can go over

7   those with --

8           THE COURT:  That's all right.  Your witness list

9   must be filed no later than next Monday, both sides, and

10  exhibits, of course, you need to have them tabbed.

11          Then in addition to having a notebook for me, the

12  originals with the clerk, for each witness counsel should have

13  a separate Redweld with the exhibits for that witness only so

14  they're not only looking at -- wait, they're on this side.  I'm

15  sorry.  I'm used to Courtroom 6A where they're on the other

16  side.  They're not having to fumble through multiple notebooks

17  to find the documents you're asking about.  So for each

18  witness, you have to have a separate Redweld for that witness

19  with their documents, copies obviously because the originals

20  are with the clerk.

21          Make sure you know how to use the AV system.  If

22  you don't, if you're going to have somebody assist you during

23  trial with the showing of exhibits, then make an appointment

24  with our IT department through our clerk, and they will give a

25  tutorial.  But do not practice with your props in front of the

1   jury.  Make sure you know how to use the equipment properly and

2   expeditiously because I'm not going to give a recess in the

3   middle of trial to have a tutorial.  It's rare that our system

4   goes down, and when it does, it's often because of one party or

5   the other's error in using it, and we want to avoid that.

6           I'm going to tell the jury panel when I'm doing

7   voir dire that this case will most likely be finished up in

8   terms of evidence and closings and so forth by Friday.  I can't

9   predict the amount of time it will take them to deliberate on

10  the case, but that the trial will end by Friday.  If we for

11  whatever reason do not finish by Friday, I probably will tell

12  them they're going to come back on Monday.  Well, I'm going to

13  tell them they're going to come back on Monday.  If we are not

14  finished with everything, I will move my usual Monday matters,

15  and we will continue with the trial.  If we do finish as

16  anticipated by Friday of that week, then they will come back on

17  Monday to deliberate.  So counsel should keep your obligations

18  open because you will probably be here that Monday.

19          My trial schedule is from 9:00 in the morning

20  until 4:30 in the afternoon.  I require counsel to be here at

21  8:30.  If there is anything you need to bring up before we

22  bring the jury in, do not wait until 8:59 to tell the clerk

23  that because I won't honor your request because at 9:00, if all

24  the jurors are here -- and they usually are -- we will start.

25  So if you have something you need to discuss with me, tell the

1    clerk at 8:30.  The courtroom is usually open by 8:00 or 8:15

2    at the latest.  See if you can work it out, whatever the issue

3    is, with the other side.  If you can't, I will take the bench

4    at 8:30, and we will discuss it so that we can begin promptly

5    with the jury at 9:00 o'clock.

6              We take about an hour -- depending on -- it

7    depends on how many trials are going on in the courthouse.  If

8    the courthouse is packed, it is difficult for the jury to get

9    downstairs, order lunch, and be back by 1:00.  In that case,

10   the lunch would be from 12:00 to 1:15 roughly but, if possible,

11   12:00 to 1:00 is better, and then we finish at 4:30.  We take a

12   mid-morning break and mid-afternoon break.  It is a little

13   different on the day we are picking the jury.  If we can finish

14   with jury selection by 1:00 o'clock, I go straight through so

15   we can just excuse everyone who is not going to be serving.

16             I don't normally allow attorney voir dire.  But,

17   like I said, when I finish my voir dire, I will ask if -- at

18   the sidebar if any of you have any additional questions you

19   want me to ask.

20             Any questions?

21             MR. FEE:  No, Your Honor.  Thank you.

22             MR. PI:  Yes from the Government.  No questions.

23   But I just wanted to notify the Court that the parties have met

24   and conferred and filed a joint proposed set of jury

25   instructions.  The Government lodged with the courtroom deputy

```
 1   a proposed statement of the case and its verdict form.
 2              THE COURT:  And those are agreed upon?
 3              MR. PI:  No.  We shared them with the defense,
 4   but we don't know their position with respect to those two
 5   items.
 6              THE COURT:  Okay.  That was the statement of the
 7   case.  And what was the other thing?
 8              MR. PI:  The verdict form.
 9              THE COURT:  All right.  Any objections to either
10   of those or any additions or edits you want to make, make sure
11   I get them by Thursday of this week.
12              MR. FEE:  Yes, Your Honor.
13              MR. PI:  Yes, Your Honor.  Are we going to have
14   any further status, or are we just -- we will see the --
15              THE COURT:  No.  Assuming that I deny the
16   application, no.
17              MR. FEE:  Of course, Your Honor.  I don't believe
18   we have seen the tentative.
19              THE COURT:  It wasn't handed out to you?
20              MR. PI:  No.  Same for the Government.
21              THE COURT:  You handed it out to both sides?
22              THE CLERK:  No.
23              THE COURT:  I'm sorry.  I will just explain
24   briefly.  I will grant the motion, but it's subject to, as in
25   any motion in limine, it is subject to what actually happens at
```

1    trial.  So, you know, if there's an argument by the defense or

2    testimony during the defense case by any witness, the defendant

3    or any other witnesses called, to the effect of have you ever

4    been convicted -- have you ever taken money from any employer?

5    Have you ever been convicted of any crime?  The question from

6    the defense obviously would be you have never been in any

7    trouble with the law.  Obviously, if the door is opened, then

8    it changes.  I don't like to offer up examples obviously.  But

9    that's my -- that's the substance of my ruling.

10                 If you want to take a few minutes and read that,

11    I can take the bench again in case you want to argue.

12                 MR. FEE:  It makes sense to us, Your Honor.

13                 THE COURT:  All right.  Fine.  Just let Daniel

14    know when you're ready.

15                 MR. FEE:  Do you need more time, Government?

16                 THE COURT:  Well, take a minute and read it.  I

17    don't want to rush it.

18                 MR. PI:  Few minutes, Your Honor.

19            (A recess was taken at 10:36 a.m.)

20                 THE COURT:  All right.  Mr. Pi or Mr. Weiner.

21                 MR. PI:  The Government has now had an

22    opportunity.  We don't need to argue.  We would accept what the

23    Court has said is its tentative.

24                 THE COURT:  All right.  I take it you don't want

25    to argue.

```
1              MR. FEE:  It is wonderful, Your Honor.  No.
2              THE COURT:  All right.  I will issue a ruling on
3    the application in the next day or two at the latest.
4    Otherwise, I will see you on the 30th.
5              Counsel should be here -- we won't get the jury
6    up until about -- usually it's 9:00 or 9:30 at the earliest.
7    Counsel should plan to be here at 8:30.  Again, if you need
8    assistance with working the AV system, Mr. Tamayo will help you
9    get an appointment with the IT department.  Thank you.
10             MR. FEE:  Thank you, Your Honor.
11             THE CLERK:  All rise.  This Court is adjourned.
12             THE COURT:  One other thing.  It's my practice I
13   won't take a guilty plea under a plea agreement less than one
14   week before trial because, if we don't need jurors here, we
15   shouldn't be calling them in.  A defendant, of course, can
16   plead guilty at any time, but it won't be under a plea
17   agreement if it's any later than next Monday that my CRD is
18   contacted.  Thank you.
19             MR. FEE:  Thank you, Your Honor.
20             (Proceedings concluded at 10:42 a.m.)
21
22
23
24
25
```

```
 1                 CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5              I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

 6   COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

 7   THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

 8   PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

 9   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13   THE UNITED STATES.

14

15                 DATED THIS  25TH  DAY OF JANUARY, 2024.

16

17

18                 /S/ MIRANDA ALGORRI

19                 _____
                   MIRANDA ALGORRI, CSR NO. 12743, CRR
20                 FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25
```