# Exhibit A

| | |
|---|---|
| **Cc:** | Ted Farnsworth[tedfarnsworth@hotmail.com] |
| **To:** | Kevin Friedmann[friedmannk@gtlaw.com] |
| **From:** | Mitch Lowe[mitch@moviepass.com] |
| **Sent:** | Sat 2/9/2019 12:36:53 AM (UTC) |
| **Subject:** | Khalid's employment agreement |

Itum, Khalid - Offer of Employement 10.16.17 (Executed).pdf

Exhibit 69
Page 1 of 4

Usao_Itum_00000615

# MoviePass, Inc.
175 Varick St, New York, NY 10014

October 12, 2017

Khalid Itum
Khalid@moviepass.com

Dear Khalid;

    I am pleased to offer you a position as VP, Business Development, an exempt position, with MoviePass, Inc. (the "**Company**"). If you decide to join us, you will receive an annual salary of $120,000, which will be paid semi-monthly in accordance with the Company's normal payroll procedures. As an employee, you will also be eligible to receive certain employee benefits. You should note that the Company may modify job titles, salaries and benefits from time to time as it deems necessary.

You will also be eligible to be considered for a target bonus up to 50% of your base annual salary paid every six (6) months, subject to the satisfaction of Company and individual performance criteria set by the Chief Executive Officer (CEO) and hitting 100% of Defined Goals. Your annual bonus earning potential is $60,000 ($30,000 every 6-month period). The bonus is based on 80% driven by individual goal attainment of hitting Defined Goals and 20% driven by CEO's discretion (Performance, Leadership, Team Player, etc.). Proposed Defined Goals for the first 6-month period include the following:

- First 3 Month Period – Entirely focused on signing up to four (4) Studios to run case studies with MoviePass
- Second 3 Month Period – Enter into revenue-generating deals with those Studios amounting to at least $2M monthly

Subject to approval by the Company's Board of Directors (the "***Board***"), the Company anticipates granting you an option to purchase 1.8 million current shares of the Company's common stock at the fair market value as determined by the Board as of the date of grant (the "***Option***"). The anticipated Option will be governed by the terms and conditions of the Company's 2011 Stock Option Plan (the "***Plan***") and your grant agreement, and will include a three (3) year vesting schedule, until either the Option is fully vested or your continuous service (as defined in the Plan) terminates, whichever occurs first.

    The Company is excited about your joining and looks forward to a beneficial and productive relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without

Exhibit 69
Page 2 of 4

Usao_Itum_00000616

Page 2

notice. We request that, in the event of resignation, you give the Company at least two weeks notice.

The Company reserves the right to conduct background investigations and/or reference checks on all of its potential employees. Your job offer, therefore, is contingent upon a clearance of such a background investigation and/or reference check, if any.

For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States. Such documentation must be provided to us within three (3) business days of your date of hire, or our employment relationship with you may be terminated.

We also ask that, if you have not already done so, you disclose to the Company any and all agreements relating to your prior employment that may affect your eligibility to be employed by the Company or limit the manner in which you may be employed. It is the Company's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to the Company. Similarly, you agree not to bring any third party confidential information to the Company, including that of your former employer, and that in performing your duties for the Company you will not in any way utilize any such information.

As a Company employee, you will be expected to abide by the Company's rules and standards. Specifically, you will be required to sign an acknowledgment that you have read and that you understand the Company's rules of conduct which are included in the Company Handbook, which the Company will soon complete and distribute.

As a condition of your employment, you are also required to sign and comply with an At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement which requires, among other provisions, the assignment of patent rights to any invention made during your employment at the Company, and non-disclosure of Company proprietary information. In the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree that (i) any and all disputes between you and the Company shall be fully and finally resolved by binding arbitration, (ii) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (iii) all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion, (iv) the arbitration shall provide for adequate discovery, and (v) the Company shall pay all the arbitration fees, except an amount equal to the filing fees you would have paid had you filed a complaint in a court of law. Please note that we must receive your signed Agreement before your first day of employment.

To accept the Company's offer, please sign and date this letter in the space provided below. A duplicate original is enclosed for your records. If you accept our offer, your first day of

Exhibit 69
Page 3 of 4

Usao_Itum_00000617

Page 3

employment will be October 16, 2017. This letter, along with any agreements relating to proprietary rights between you and the Company, set forth the terms of your employment with the Company and supersede any prior representations or agreements including, but not limited to, any representations made during your recruitment, interviews or pre-employment negotiations, whether written or oral. This letter, including, but not limited to, its at-will employment provision, may not be modified or amended except by a written agreement signed by the President of the Company and you. This offer of employment will terminate if it is not accepted, signed and returned by November 2, 2017.

We look forward to your favorable reply and to working with you at MoviePass, Inc.

Sincerely,

*/s/ Mitch Lowe*
Mitch Lowe
Chief Executive Officer

Agreed to and accepted:

Signature: */s/ Khalid Itum*

Printed Name: Khalid Itum

Date: 11/3/2017

Enclosures
Duplicate Original Letter
At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement

Exhibit 69
Page 4 of 4

Usao_Itum_00000618